**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>VINCENT GILLESPIE,<br><br>Defendant. | Case: 1:26-mc-00043<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 4/9/2026<br>Description: Civ. Misc.<br><br>Case No. 22-cr-60 (BAH) |

**APPLICATION OF NATIONAL PUBLIC RADIO, INC.
FOR ACCESS TO AND PERMISSION TO DISSEMINATE CERTAIN
EXHIBITS PRESENTED BY THE UNITED STATES AT TRIAL**

1.  Pursuant to Local Criminal Rule 57.6, applicant National Public Radio, Inc. ("NPR") respectfully seeks access to certain exhibits previously presented by the United States (the "Government") at the trial in this matter, along with permission to copy and disseminate such exhibits.

2.  Specifically, NPR seeks access and permission to disseminate the following 22 exhibits presented by the Government at trial:

- Exhibit 401 (CCTV Time Lapse Video);
- Exhibit 402 (CCTV footage – 0074 LWT Tunnel 410-427pm);
- Exhibit 403 (CCTV footage – 0074 LWT Tunnel Gillespie with Yellow Circle);
- Exhibit 404 (CCTV footage – Rooftop Camera);
- Exhibit 405 (CCTV footage – Rooftop Camera);
- Exhibit 601 (Associated Press Video);
- Exhibit 602 (Gillespie Near Tunnel);
- Exhibit 605 (Video of Gillespie on Ledge of West Terrace with Yellow Square);
- Exhibit 606 (Photo of Gillespie on Scaffolding with Yellow Circle);
- Exhibit 607 (Photo of Gillespie);
- Exhibit 608 (Photo of Gillespie);
- Exhibit 611 (Selfie of Officer Ak);
- Exhibit 701 (BWC footage of MPD Officer Mustafa Ak);

RECEIVED

APR 09 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

- Exhibit 702 (BWC footage of MPD Officer Mustafa Ak with Yellow Circle);
- Exhibit 703 (BWC footage of MPD Officer Jason Mastony);
- Exhibit 704 (BWC footage of MPD Officer Henry Foulds);
- Exhibit 705 (BWC footage of MPD Sergeant Riley);
- Exhibit 706 (BWC of Officer Spooner shows Sgt. Riley);
- Exhibit 707 (BWC of Sgt. Bogner shows Sgt. Riley);
- Exhibit 804 (Search Photo – Sweatshirt);
- Exhibit 805 (Search Photo – Backpack);
- Exhibit 806 (Search Photo – Folder and Contents).

*See* Gov't Trial Exs. (Dkt. No. 63-1).

3.      As set forth herein, the press and the public have a presumptive right of access to the 22 exhibits specified in Paragraph 2 (hereinafter referred to collectively as the "Requested Exhibits") under both the common law and the First Amendment, and no countervailing factors justify placing limitations on copying or disseminating the Requested Exhibits.

## INTEREST OF THE APPLICANT

4.      Applicant National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public.  NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term.  NPR reaches approximately 42 million people per week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube content.  NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to 243 NPR members and numerous other NPR-affiliated entities.  NPR is headquartered in Washington, D.C.

5.     NPR continues to cover the January 6, 2021 attack on the United States Capitol and its aftermath, including the prosecutions brought against 1,575 defendants for their actions that day (the "Capitol Cases").

6.     NPR maintains a comprehensive, public database preserving information about the Capitol Cases. *See Jan. 6 Archive: The Capitol Charges*, NPR, https://apps.npr.org/jan-6-archive/database.html (last accessed Apr. 7, 2026).  NPR's database and continued reporting rely upon access to judicial records, including evidence submitted by the government in pre-trial, trial, and sentencing proceedings in the Capitol Cases.

7.     In May 2021, NPR joined a coalition of fourteen media organizations in filing a petition in this District for the issuance of a Standing Order to provide a uniform method of prompt access to judicial records in Capitol Cases, including video exhibits. *See generally In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, No. MC 21-46 (BAH), 2021 WL 1946378 (D.D.C. May 14, 2021).  The result of that petition was the issuance of Standing Order No. 21-28, a copy of which is attached as Exhibit A to this Application.

8.     Standing Order No. 21-28 required members of the media seeking to access and/or copy video exhibits in Capitol Cases to "file an application, pursuant to D.D.C. LCrR 57.6, to the presiding judge in the case, or if no judge has been assigned, to the Chief Judge, for determination, and the judge may seek the position of the parties." Standing Order No. 21-28 at 5.

9.      Standing Order No. 21-28 directed the Government to utilize a "'drop box' technical solution to make available for viewing the government's video exhibits submitted to the Court in Capitol Cases" upon grant of a media application for access. *Id.* at 6.

10.     Standing Order No. 21-28 further provided that "[n]o recording, copying, downloading, retransmitting or further broadcasting of video exhibits in a particular case is permitted, unless such permission is granted by the presiding judge, who may seek the position of the parties." *Id.*

11.     The USAfx site that was implemented by the Government to share video exhibits in accordance with Standing Order No. 21-28 is no longer being maintained. A hard drive containing the previous contents of the USAfx site was lodged with the Clerk of the Court in June 2025. *See* Notice of Lodging, *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, No. 21-mc-0046 (June 16, 2025), Dkt. No. 19.

12.     No application for access to the Requested Exhibits in the instant case was previously filed under the procedure specified by Standing Order No. 21-28. Accordingly, the Requested Exhibits are not presently available to NPR.

13.     NPR now seeks access to the Requested Exhibits for use in its reporting and for inclusion in its database concerning Capitol Cases.

## STATEMENT OF FACTS

14.     Defendant Vincent Gillespie ("Defendant") was among those charged in the Capitol Cases for his role in the events of January 6, 2021. Defendant was alleged to have been "among rioters in the Lower West Terrace of the Capitol who engaged in

pushing, shoving, yelling, and fighting with law enforcement officers," to have "gained control of police riot shields, using it to ram the police," and to have grabbed a Metropolitan Police Department sergeant "by the arm for several seconds, keeping the sergeant from fending off other attacks, and yanking the sergeant towards the mob." *See* Gov't Sent'g Mem. at 2 (Dkt. No. 81).

15.    In December 2022, following a four-day trial, a jury rendered a guilty verdict against Defendant for violating 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. § 1752(a)(4) (Engaging in Physical Violence in a Restricted Building or Grounds); and 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in the Capitol Grounds or Buildings). *See* Verdict (Dkt. No. 70).

16.    Over the course of the trial, the Government proffered approximately 106 exhibits. *See* Gov't Trial Exs. at 1–12 (Dkt. No. 63-1). Of those, 22 were the Requested Exhibits themselves, and an additional 31 were still images derived from the Requested Exhibits. *Id.* at 4–10.

17.    The Requested Exhibits consisted of "body worn cameras from the MPD, open-source video, and surveillance footage from the Capitol" documenting the attack and Defendant's participation in it, *see* Gov't Sent'g Mem. at 12 (Dkt. No. 81), as well as photos of Defendant that day and photos documenting the fruits of the government's search of Defendant's home.

18.    As trial exhibits presented to the jury to show Defendant's guilt and admitted into evidence, the Requested Exhibits played a significant role in the

"adjudicatory process" that produced his conviction, *see In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) ("[W]hether something is a judicial record depends on the role it plays in the adjudicatory process." (internal quotations omitted)), and thus "are fully encompassed by the presumption in favor of access to judicial records." *See In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (concluding media coalition's post-trial application to inspect and copy video and audio exhibits admitted at trial should have been granted).

19.     The Requested Exhibits are also subject to a presumptive right of access under the "general right of access to court proceedings and court documents" derived from the First Amendment. *See Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). The presumptive right of access under the First Amendment attaches to court proceedings and records where "access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct." *Id.* at 288. Both factors are satisfied with respect to trial exhibits. "The fact that there is a common law tradition of right of access is an appropriate consideration to take into account when examining the scope of the First Amendment," *see In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 89 (D.D.C. 2008), and the common law has long created a presumptive right of access to trial exhibits. *See In re Nat. Broad. Co., Inc.*, 653 F.2d at 614. Access to trial exhibits, like access to trials themselves, "enhances both the basic fairness of the criminal

[proceeding] and the appearance of fairness so essential to public confidence in the system." *Washington Post*, 935 F.2d at 288 (alteration in original).

20.    Neither the Government nor Defendant can rebut the presumption of access to the Requested Exhibits under the analysis of the factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) (discussing common law factors), much less identify a "compelling reason" for overcoming the First Amendment right of access.  *See Washington Post*, 935 F.2d at 288 (right of access "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest") (quoting *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984)).[1]

21.    The public has an extraordinary interest in accessing the Requested Exhibits.  The events of January 6 are "of deep national importance and public interest both as to the offense conduct and individuals involved, and the efforts of federal law enforcement agents, prosecutors and the courts in handling the cases arising out the events on January 6th." *United States v. Jackson*, No. CR 21-MJ-115, 2021 WL 1026127, at *6 (D.D.C. Mar. 17, 2021).

---

[1]    If this Court ultimately concludes that the common law right of access provides Applicant with the relief it seeks herein, it need not reach the question of whether the First Amendment right of access would also apply. *See In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1126–27 (D.C. Cir. 2020) ("In light of the result we reach with respect to the common law, we avoid unnecessarily passing on a constitutional question of first impression in this circuit."). However, the "different and heightened protections of access that the first amendment provides over common law rights" would require reaching the constitutional question in the event the Court were to determine that the common law balancing test did not favor release here. *Cf. Washington Post*, 935 F.2d at 288 n.7 (reaching constitutional issue even where common law right of access attached).

22.    No countervailing interest could conceivably be identified that would outweigh the public's right to access "what has already been publicly viewed and heard in court," and "what the jury evidently considered to be weighty evidence of criminal misconduct." *In re Nat. Broad. Co., Inc.*, 653 F.2d at 619.

23.    On January 20, 2025, while Defendant was serving a term of imprisonment, *see* Judgment (Dkt. No. 88) (sentencing Defendant to a term of imprisonment of 68 months), and while an appeal of the judgment against him remained pending, *see United States v. Gillespie*, No. 23-3053 (D.C. Cir. Apr. 17, 2023), President Donald Trump issued a proclamation granting "a full, complete and unconditional pardon" to "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025).

24.    As a result, the judgment against Defendant was vacated and the case was dismissed as moot. *See* Order (Dkt. No. 104-1).

25.    The public's interest in accessing the Requested Exhibits is only heightened by Defendant's pardon. The effect of Defendant's pardon is not that he is adjudicated "innocent" of the crimes he was previously convicted of, but that "the efficacy of the jury verdict against [him] remains only an unanswered question" that will "never again be tried." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001). Because the Requested Exhibits are judicial records underlying Defendant's previous conviction, the public maintains a significant interest in accessing them not just to

8

evaluate the efficacy of the judicial proceedings that produced that conviction, but the wisdom of his pardon.

26.     There is also no conceivable interest in preventing NPR from copying and disseminating the Requested Exhibits.  The common law right of access ordinarily includes the "right to inspect and copy," *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)), and there is no reason to depart from that rule here.  Even in an ordinary case, "[r]ebroadcasting evidence already shown at trial may present little risk of juror taint," *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 WL 1946378, at *5, and here, Defendant's pardon has entirely eliminated the risk of any future re-trial.  There is accordingly no risk of prejudice to Defendant in granting the instant Application.

## PRAYER FOR RELIEF

27.     Because the Requested Exhibits are judicial records subject to an unrebutted presumption of public access under the common law and the First Amendment, NPR respectfully requests that the Court grant the foregoing Application, order the Government to provide NPR copies of the Requested Exhibits, and allow NPR to disseminate copies of the same.

28.     In the event either the Government or Defendant objects to the relief requested herein, NPR respectfully requests oral argument.

29.     NPR seeks any further relief that the Court deems just and proper.

9

Dated: April 8, 2026

Respectfully submitted,

*/s/ Adam A. Marshall*
Adam A. Marshall
DC Bar No. 1029423
Allyson Veile
DC Bar No. 1766038
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9308
Facsimile: 202.795.9310
Email: amarshall@rcfp.org
Email: aveile@rcfp.org

*Counsel for Applicant*

10